UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-2127 JGB (SPx)** | Date | February 19, 2019 |
| Title | *Matthew Wheatley v. MasterBrand Cabinets, LLC et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 14); (2) REMANDING the Case to the San Bernardino Superior Court; (3) VACATING the February 25, 2019 Hearing; and (4) DENYING AS MOOT Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) (IN CHAMBERS)**

Before the Court is Plaintiff's Motion to Remand ("Motion," Dkt. No. 14.) The Court determines the Motion is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

On August 7, 2018, Plaintiff Matthew Wheatley ("Plaintiff") filed his complaint for a putative class action against Defendant MasterBrand Cabinets, Inc. ("Defendant") and Does 1–100 in the Superior Court of California for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) Plaintiff brought the action on behalf of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during" the class period. (Compl. ¶ 13.) The Complaint advances multiple claims: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime), (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums), (3) violation of California Labor Code § 226.7 (unpaid rest period premiums), (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wage), (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid), (6) violation of California Labor Code § 204 (wages not timely paid during employment), (7) violation of California Labor Code § 226(a) (non-compliant wage

statements), (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records), (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses), and (10) violation of California Business & Professions Code §§ 17200, et seq. (See Compl.)

Defendant removed the action to this Court on October 4, 2018, asserting that the Court had subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (See "Notice of Removal" or "NOR," Dkt. No. 1 at 3.) On November 5, 2018, Plaintiff filed his Motion, arguing that the action should be remanded to state court because Defendant failed to prove by a preponderance of the evidence that the amount in controversy ("AIC") exceeds the $5 million required by CAFA. (Motion at i.) Defendant filed an opposition on December 21, 2018. ("Opposition," Dkt. No. 21.) On December 31, 2018, Plaintiff filed a reply. ("Reply," Dkt. No. 22.)

## II.  LEGAL STANDARD

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs.  28 U.S.C. § 1332(d); Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  While generally courts must "strictly construe the removal statute against removal jurisdiction," Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992), no anti-removal presumption exists in cases invoking CAFA, Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).

"In determining the amount in controversy, courts first look to the complaint." Ibarra, 775 F.3d at 1197.  Where damages are unstated in a complaint, the defendant bears the burden of proving the amount in controversy is met.  Id.  Though a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee, 135 S. Ct. at 550.  In the Ninth Circuit, a removing defendant must "prove that the amount in controversy . . . exceeds the jurisdictional threshold by a preponderance of the evidence," using "summary-judgment-type evidence." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 795 (9th Cir. 2018).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 at 1197.

In the Ninth Circuit, the amount in controversy is assessed at the time of removal. Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).  This amount encompasses all relief that a court may grant if the plaintiff is victorious on the claims in the operative complaint at the time of removal.  Chavez v. JPMorgan Chase, 888 F.3d 413, 417 (9th Cir. 2018). "If a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at

stake in the litigation and should be included in the amount in controversy . . ." Fritsch, 899 F.3d at 788.

## III. DISCUSSION

Plaintiff asserts that Defendant fails to prove the AIC exceeds $5 million because it has not "provided competent evidence regarding, *inter alia*, the number of putative class members, the number of workweeks or workdays worked by putative class members, or putative class members' average rate of pay." (Motion at 5.) Plaintiff also argues that Defendant does not adequately support its calculations of the amount at issue in the unpaid overtime claim (id. at 8–10), the meal and rest break claims (id. at 10–13), the claim for failure pay wages on time (id. at 13–15), the wage statement claim (id. at 15–16), and attorneys' fees (id. at 16–17).[1] The Court considers each argument in turn.

**A. General Sufficiency of the Evidence**

Here, because the Complaint does not state the amount of damages sought, Defendant must prove the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Id. (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). A defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).

Plaintiff points out that the only evidence Defendant has submitted regarding the number of putative class members, the amount of time worked, and the rate of pay – figures necessary to calculate the amount in controversy – is the declaration of Chase Thornburg, Defendant's Vice President of Human Resources ("Thornburgh Decl.," Dkt. No. 3). (Motion at 5.) In the Declaration, Thornburgh states that he "ha[s] personal knowledge of the facts contained in th[e] declaration" and "ha[s] access to payroll and employment/personnel records of current and former employees," which "are kept in Defendant's payroll, timekeeping, and human resources management systems in the ordinary course of business." (Thornburgh Decl. at 1.) Thornburgh avers that the information provided on the number of putative class members, weeks worked, and average pay rate are "[b]ased on [his] review of the data retrieved" (id. ¶¶ 8–10, 12) "from Defendant's payroll and human resources databases" (id. ¶ 7).

Plaintiff argues that "Defendant has not laid the necessary foundation for the figures it relies upon" (Motion at 8) because it has not provided the records on which Thornburgh's

---

[1] Defendant does not address the fourth (unpaid minimum wages), sixth (wages not timely paid during employment), eighth (failure to keep requisite payroll records), ninth (unreimbursed business expenses), or tenth (Cal. Bus. & Professions Code §§ 17200, et seq.) claims in its Notice of Removal or Opposition and has therefore failed to allege or prove any AIC for those claims.

Declaration draws (id. at 5); because Thornburgh does not describe the process by which he extracted the data from the records and calculated the figures he provides in the Declaration (id. at 5–6); because he does not "identify[] what specific records or databases he reviewed" (id. at 7); and because he does not put forth sufficient evidence of his personal knowledge of the information in the Declaration (id. at 6). Plaintiff cites one case in support of the contention that the Thornburgh Declaration is insufficient to establish the AIC: Contreras v. J.R. Simplot Co., 2017 WL 4457228 (E.D. Cal. Oct. 6, 2017). (Id. at 5.) In Contreras, the court concluded that "[a] defendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is 'a declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages.'" 2017 WL 4457228 at *3 (quoting Garibay v. Archstone Communities LLC, 539 Fed. Appx. 763, 764 (9th Cir. 2013) (unpublished)). However, it is unclear whether the declaration at issue in Contreras – or that at issue in the unpublished Ninth Circuit opinion quoted in Contreras – was based on a review of the defendant's payroll and personnel records, or simply gave the declarant's rough estimates.

Defendant counters that "[t]here is not a single case holding that a defendant must present business records or documents as 'concrete evidence' to support the amount in controversy." (Opp. at 6.) Rather, Defendant asserts, "[i]n denying motions to remand, courts routinely rely on similar evidence – *i.e.*, declarations based on official business records[.]" (Id.) In support of this contention, Defendant cites three decisions from this Court (Opp. at 6–7[2]) and the decisions of several other Central District courts (id. at 7 n. 2[3]).

One of this Court's decisions cited by Defendant is Torrez v. Freedom Mortg., Corp., 2017 WL 2713400. In Torrez, the defendant relied on two declarations of its Vice President of Human Resource Operations, which provided the number of putative class members, whether they worked full-time or part-time, the number of hours they were scheduled to work, and their average hourly pay. 2017 WL 2713400 at *2. That information was based on the HR executive's review of payroll records and reports from software utilized by the defendant. Id. The Court concluded that the defendant had laid a sufficient foundation for the declaration because the declarant was "the Vice President of Human Resource Operations, and in that position he ha[d] access to certain employee-related information through UtilPro software, including personnel files and payroll records, which he accesse[d] through his regular course of business activities" and reviewed for the purposes of providing the figures in question. Id. at *3. The Court also determined that the defendant had adequately supported its calculations with evidence drawn from its payroll records. Id. *4. The only relevant distinction between the declarations offered in

---

[2] Citing Byrd v. Masonite Corp., 2016 WL 2593912, at *2 (C.D. Cal. May 5, 2016); Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *2–3 (C.D. Cal. June 22, 2017); Moppin v. Los Robles Reg'l Med. Ctr., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 24, 2015)).

[3] Citing Jones v. Tween Brands, Inc., 2014 WL 1607636, at *1 (C.D. Cal. Apr. 22, 2014); Lucas v. Michael Kors (USA), Inc., 2018 WL 2146403, at *3 (C.D. Cal. May 9, 2018); Al–Najjar v. Kindred Healthcare Operating, Inc., 2017 WL 4862067, at *2-4 (C.D. Cal. Oct. 26, 2017); Sanchez v. The Ritz Carlton, 2015 WL 4919972, at *3 (C.D. Cal. Aug. 17, 2015).

Torrez and the Thornburgh Declaration is that Thornburgh did not specify the name of the software used to maintain Defendant's payroll and personnel records. The Court does not find this difference material.

Consistent with the Court's decision in Torrez and the opinions of other Central District courts, see supra n. 2, the Court concludes that Thornburgh's Declaration is supported by a sufficient foundation and constitutes "summary-judgment-type evidence" that, if combined with reasonable assumptions regarding the violation rates, provides an adequate basis for Defendant's AIC calculation. See Ibarra, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence . . . , using reasonable assumptions underlying the defendant's theory of damages exposure."). The Court addresses the reasonableness of the assumptions upon which Defendant's calculations rely on a claim by claim basis.

## B. Unpaid Overtime

Defendant calculates the AIC for the unpaid overtime claim to be approximately $1,159,222.70. (NOR at 15.) To reach this figure, it assumes two and a half hours of overtime per week per class member.[4] (Id.) Plaintiff challenges this estimate, arguing that "Defendant provides no reasonable explanation for assuming that each putative class members worked two-and-one-half hours of unpaid overtime every single week." (Motion at 8.)

Defendant responds that "[a]ny plausible reading of the Complaint shows that the allegations refer to a universal practice for every employee on every shift." (Opp. at 10.) Specifically, it points to the language in the Complaint indicating that Defendant "engaged in a pattern and practice of wage abuse . . . [which] involved . . . failing to pay them for all regular and/or overtime wages earned[.]" (Opp. at 10 (quoting Compl. ¶ 25).) Defendant further highlights Plaintiff's allegation that he "and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation" (id. (quoting Compl. ¶ 37)) and that "Defendant[] intentionally and willfully failed to pay overtime wages" (id. (quoting Compl. ¶ 53)). Defendant characterizes these claims as "sweeping allegations that Plaintiff and the putative class worked overtime hours on every shift" for which they were not compensated. (Opp. at 10–11.)

Plaintiff responds that "Defendant purposefully misconstrues Plaintiff's allegations to support its unreasonable assumption." (Reply at 6.) The Court agrees that Defendant's interpretation of the allegations is not supported by the text of the Complaint. As Plaintiff points out "a 'pattern and practice of wage abuse' does not mean that Defendant never properly compensated Plaintiff or the putative class members for overtime hours." (Reply at 7 (citing Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1998–99 (9th Cir. 2015)).) Here, as in Ibarra, Plaintiff alleges a "pattern and practice," but "does not allege that this 'pattern and practice' is universally followed[.]" See 775 F.3d at 1199. Further, Plaintiff's allegation that he "and the other class members were required to work more than eight (8) hours per day and/or forty (40)

---

[4] "(24,482 workweeks) x ($12.63 per hour [average hourly pay] times 1.5 [overtime rate]) x (2.5 hours overtime hours per week)." (NOR at 15.)

hours per week without overtime compensation" (Compl. ¶ 37) says nothing about the frequency with which the putative class members worked overtime hours or with which Defendant failed to pay them for those overtime hours; rather, the Court understands this language to mean that all class members worked overtime for which they were not compensated at least once during the class period.  Finally, the Court agrees with Plaintiff that his "allegation that Defendant failed to properly compensate[] Plaintiff and the putative class members for 'all' overtime hours worked is not equivalent to an allegation that Defendant never properly compensate[d] Plaintiff and the putative class members for any overtime hours worked." (Reply at 6–7.)

Defendant argues that its estimates cannot be dismissed as "too speculative" because Plaintiff "would be in the best position to offer evidence and testimony on this subject – at least as to his own individual amount of overtime hours worked with[out] compensation." (Opp. at 11.)  As Defendant points out, "Plaintiff did not provide this type of information, even for himself." (Id.)  Plaintiff contends that it is Defendant's burden to provide competent evidence, and notes that "as the employer, Defendant has ready access to the facts, records, and information necessary to make the requisite showing under CAFA." (Motion at 8–9.)  However, "a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation." Unutoa v. Interstate Hotels & Resorts, Inc., 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (citing Oda v. Gucci Am. Inc., 2015 WL 93335, at *5 (C.D. Cal. Jan.7, 2015)).  Here, the Complaint provides no indication of the violation rate.  Plaintiff cannot "avoid federal jurisdiction by purposefully opaque pleading." Herrera v. Carmax Auto Superstores California, LLC, 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014).  Nor can he rely on the argument that Defendant has failed to prove the violation rate without alleging or offering evidence of a lower violation rate. See Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) (denying motion to remand where "Plaintiffs [did] not sufficiently contest Defendant's allegation because they never contend[ed] that they [were] putting an amount lower than $5 million at issue and [did] not offer any conflicting evidence that call[ed] Defendant's estimates into question"); Lopez v. Aerotek, Inc., 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (denying motion to remand where "Plaintiff [did] not assert or suggest an alternative violation rate on which the Court should rely[,]" despite having the opportunity to do so).

Thus, Defendant and the Court must rely on assumptions regarding the rate of the alleged violations.  The Court finds Defendant's estimate of 2.5 hours per class member per week excessive, given that Plaintiff did not allege that all class members worked uncompensated overtime every day.  It finds an estimate of one hour per class member per week to be appropriate in light of Plaintiff's allegation that Defendant had a "pattern and practice" of wage abuse, including overtime violations. See Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); Oda, 2015 WL 93335 at *4 (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each

class member where the complaint alleged "consistent" unpaid overtime work). The Court therefore concludes that a reasonable estimate of the AIC for the overtime claim is $463,811.49.[5]

## C. Unpaid Meal and Rest Breaks

Defendant calculates the AIC for the unpaid meal and rest break claims to be approximately $2,473,661.28. (NOR at 14.) To reach this figure, it assumes five meal period violations and three rest period violations per week per class member.[6] (Id.) Plaintiff argues "Defendant fails to provide a rationale for why it is reasonable to assume that meal and rest break violations occur with such frequency." (Motion at 11.) Defendant responds by pointing to Plaintiff's allegation that Defendant had a "polic[y] and practice[] of requiring employees, including Plaintiff and the other class members, to work through their meal and rest periods." (Opp. at 12 (quoting Compl. ¶ 114).) Moreover, Defendant highlights that Plaintiff alleges a variety of meal period violations, such as failure to provide an uninterrupted meal period and failure to provide meal periods of adequate length. (Id. at 13.) Defendant reads the Complaint as "alleging that all employees were denied meal and rest periods on all days." (Id.)

The Court agrees with Plaintiff that Defendant misreads the Complaint. (See Reply at 8.) Nowhere does Plaintiff allege that "all employees were denied meal and rest periods on all days." (See Opp. at 13.) Moreover, Plaintiff seeks an award of "one (1) hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided" (Compl., Prayer for Relief ¶ 12) and "one (1) hour of pay . . . for each workday that a rest period was not provided" (id. ¶ 19), implying that there were days when meal and rest periods were provided. See Sanders v. Old Dominion Freight Line, Inc., 2017 U.S. Dist. LEXIS 15936, at *10 (S.D. Cal. Feb. 2, 2017) ("That the complaint expressly limits its demand to workdays in which a meal period or rest break were not provided implies that on at least some occasions, meal periods and rest breaks were provided and a violation did not occur.") However, Plaintiff's allegation of a "policy and practice" implies greater frequency than an allegation of a "pattern and practice," as policies tend to be uniformly applied.[7] Further, while Plaintiff argues that "Defendant does not even lay a foundation that all of the shifts that putative class members worked were of sufficient length to mandate the provision of meal and rest periods," Plaintiff does not assert whether or how often the putative class members worked shifts too short to trigger the meal and rest break requirements. Thus, the Court finds it reasonable to assume that all shifts were long enough to require at least one meal break and one rest break.

---

[5] (24,482 workweeks) x ($12.63 per hour [average hourly pay] times 1.5 [overtime rate]) x (1 hour overtime hours per week).

[6] "(24,482 workweeks) x ($12.63 per hour [average hourly pay]) x (8 premium payments per week [5 meal periods + 3 rest periods])." (NOR at 14.)

[7] The Court acknowledges that different policies may be applied to different groups of employees. However, Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform meal and rest break policies were applied to all putative class members reasonable.

Because Plaintiff alleges a "policy" of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and three rest break violations per employee per week reasonable. See Mejia v. DHL Express (USA), Inc., 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").

**D. Waiting Time Penalties**

Plaintiff alleges that he "and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid [wages owed upon termination], up to a thirty day (30) day maximum pursuant to California Labor Code section 203." (Compl. ¶ 87.) Defendant calculates the AIC for the waiting time claim to be approximately $733,550.40.[8] (NOR at 16.) Plaintiff questions the assumptions on which this figure is based, namely, that Defendant failed to pay wages due on termination for at least 30 days in every case and that "each of [the] 242 putative class members are entitled to eight (8) hours' worth of penalties per day[.]" (Motion at 13–14.)

As discussed above, because Plaintiff does not allege or offer evidence that some class members worked part time, it is reasonable for Defendant to assume eight-hour shifts. Moreover, the Court has previously found reasonable the use of the thirty-day maximum penalty to calculate the AIC for waiting time claims where, as here, the plaintiff failed to specify if or when any wages due at termination had been paid. See Byrd, 2016 WL 2593912, at *3; Moppin, 2015 WL 5618872, at *5. Moreover, to the extent the waiting time claim is based on nonpayment of wages allegedly owed under the other claims in this action, it is clear those wages have still not been paid, and thus that the waiting time exceeds thirty days. In line with its previous cases and the decisions of other district courts, the Court finds Defendant's use of the thirty-day maximum reasonable. See Tajonar v. Echosphere, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty).[9] The Court therefore concludes that Defendant's estimate of the AIC for the waiting time claim is supported by competent evidence and reasonable assumptions.

---

[8] "8 hours per day x $12.63 per hour [average hourly pay] x 30 days [maximum statutory waiting time penalty] x 242 employees [the number of former, non-exempt employees that were employed by Defendant during the period not barred by the three year statute of limitations]." (NOR at 16.)

[9] Plaintiff relies on Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994 (9th Cir. 2007) to support the contention that Defendant's calculation of waiting time penalties is unsupported. (Mot. at 13-15.) In Lowdermilk, the Ninth Circuit found that a declaration from a human resource employee was insufficient to prove that the CAFA jurisdictional amount was met "to a legal certainty." 479 F.3d at 999, 1001. In this case, Defendant's burden is to prove the amount

E. Wage Statement Claim

Plaintiff alleges "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." (Compl. ¶ 96.) According to Plaintiff, "[t]he deficiencies include . . . the failure to include the total number of hours worked by Plaintiff and the other class members." (Id.) Defendant calculates the AIC for the wage statement claim to be approximately $625,150.[10] (NOR at 17.) Plaintiff argues that Defendant improperly assumes that every wage statement was deficient. (Motion at 15–16.) Specifically, he contends that "Defendant fails to produce any evidence that *every* single wage statement for *every* single class member failed to state the accurate number of hours worked." (Id.)

Defendant pays its hourly employees on a weekly basis. (Thornburgh Decl. ¶ 11.) Thus, the question is whether Defendant may reasonably assume at least one inaccuracy per week. The

---

in controversy by a preponderance of the evidence, not to a legal certainty. See Dart, 135 S.Ct. at 553; see also Ibarra, 775 F.3d at 1196 (recognizing Lowdermilk overruled). Plaintiff also relies on the Ninth Circuit's unpublished opinion in Garibay, 539 Fed. Appx. 763. In Garibay, the Ninth Circuit found that the defendant provided no basis to assume that each putative class member would seek maximum waiting time penalties. Id. at 764. Unlike Garibay, in this case Defendant's assumptions are not inconsistent with Plaintiff's allegations. Because the Court has found that it is reasonable to assume that all putative class members have not been paid all of their overtime and meal and rest break wages, it is reasonable to assume that all terminated employees would have had those unpaid wages withheld after their employment ended and still not paid up to the maximum thirty-day period. See Mejia, 2015 WL 2452755, at *6; see also Long v. Destination Maternity Corp., 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) ("Defendant's estimates [of a 100% violation rate and a maximum waiting time penalty] are reasonable based on the allegations that Defendant failed to pay Plaintiff and class members their wages after leaving Defendant's employ and that Defendant has still not paid Plaintiff and class members all wages they were entitled to.").

[10] Defendant supports this figure as follows:

During the statute of limitations period for the wage statement claim, there were 209 potential class members who, according to Plaintiff, failed to receive accurate wage statements. (Thornburgh Decl., ¶ 10.) However, when excluding those pay periods that would not be entitled to a penalty because the statutory $4,000 maximum has been reached, the 209 putative class members worked 6,348 pay periods that could qualify for a wage statement penalty. (Thornburgh Decl., ¶ 10.) When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (up to a maximum of $4,000 for each employee), the amount in controversy on this claim would equal $625,150.00. (Thornburgh Decl., ¶ 10.)

(NOR ¶ 64.)

Court has already found it reasonable to assume one hour of unpaid overtime and multiple meal and rest break violations per week per class member. Because Plaintiff's wage statement claim is "derivative of [his] allegation that Defendant failed to pay him and the putative class members for all hours worked" (Motion at 16), Defendant may reasonably assume every wage statement contained at least one inaccuracy. The Court therefore concludes that Defendant's estimate of the AIC for the wage statement claim is supported by competent evidence and reasonable assumptions.

## F. Attorneys' Fees

Assuming an award of attorneys' fees equal to 25 percent[11] of the AIC for Plaintiff's meal and rest period, overtime, waiting time, and wage statement claims, Defendant estimates $1,247,896.10 in fees.[12] (NOR at 19.) However, as Defendant acknowledges, Plaintiff seeks attorneys' fees only on its overtime, meal period, minimum wage, business expenses, and Cal. Bus. & Professions Code §§ 17200, et seq. claims. (NOR at 17–18 (citing Compl. ¶¶ 55, 79, 117; Prayer for Relief ¶¶ 9, 16, 28, 52, 57).) Because the Complaint does not request attorneys' fees on the rest period, waiting time, and wage statement claims, Defendant's assumption that the total AIC includes attorneys' fees on those claims is unreasonable.[13] That leaves only the first and second claims: unpaid overtime and unpaid meal periods. The Court has determined that a reasonable estimate of the AIC for the overtime claim is $463,811.49. Based on the assumption of five meal period violations per class member per week, which the Court has determined to be reasonable, an appropriate estimate of the AIC for the meal period claim is $1,546,038.30.[14] Twenty-five percent[15] of the sum of those figures is $502,462.45. This number represents a reasonable estimate of the amount of attorneys' fees at issue.

---

[11] Defendant asserts that "[i]n the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the 'percentage of the fund' calculation and courts may depart from this benchmark when warranted." (NOR at 19 (citing Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000); Wren v. RGIS Inventory Specialists, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011); Cicero v. DirecTV, Inc., 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010); In re Quintas Secs. Litig., 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001)).)

[12] "($2,473,661.28 for Unpaid Meal and Rest Period Premiums + $1,159,222.70 for Unpaid Overtime Wages Claim + $733,550.40 for Waiting Time Penalties + $625,150.00 for Wage Statement Claim) x 0.25." (NOR at 19.)

[13] As noted supra n. 1, Defendant does not address the minimum wage, business expenses, or Cal. Bus. & Professions Code §§ 17200, et seq. claims in its Notice of Removal or Opposition. Because Defendant has provided neither evidence nor plausible allegations of the AIC for those claims, the Court will not consider them in determining the amount of attorneys' fees at issue.

[14] (24,482 workweeks) x ($12.63 per hour) x (5 premium payments per week).

[15] Plaintiff argues that the attorneys' fees calculation must be based on the lodestar method. (Motion at 17 (citing Winterrowd v. Am. Gen. Annuity, Ins. Co., 556 F.3d 815, 826-27

The reasonable estimates of the AIC for the meal and rest period claims, unpaid overtime claim, waiting time claim, wage statement claim, and attorneys' fees add up to $4,798,635.62.[16] Because this amount is below the minimum AIC required for CAFA jurisdiction, and because Defendant has alleged no other basis for federal subject matter jurisdiction, the Court must remand the case to state court.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion and REMANDS the case to the Superior Court of California for the County of San Bernardino for all further proceedings. The hearing set for February 25, 2019 is VACATED. Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is DENIED AS MOOT. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

(9th Cir. 2009); Scott v. Credico (USA) LLC, 2017 WL 4210994, at *3 (N.D. Cal. Sept. 22, 2017).) Defendant responds that "District Courts regularly apply a benchmark figure of 25% to calculate attorneys' fees in CAFA wage and hour cases." (Opp. at 23 (citing Hamilton v. Wal–Mart Stores Inc., 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017); Gutierrez v. Stericycle, Inc., 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017); Yocupicio v. PAE Grp., LLC, 2014 WL 7405445, at *6 (C.D. Cal. Dec. 29, 2014), rev'd on other grounds, 795 F.3d 1057 (9th Cir. 2015); Herrera v. Carmax Auto Superstores California, LLC, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014); Auto Fong v. Regis Corp., 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014)).) Moreover, the Court notes that the Ninth Circuit cases Plaintiff cites elsewhere embrace the use of the 25% benchmark. See Garibay, 539 F. App'x at 764 ("[Defendant] correctly notes that 25% recovery is the 'benchmark' level for reasonable attorney's fees in class action cases, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998), and that such fees are properly included in calculations of the amount in controversy, *see Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir.2007); Cal. Labor Code § 218.5 . . . ."). Thus, the Court finds use of the 25% benchmark appropriate.

[16] $2,473,661.28 (meal and rest period claims) + $ 463,811.49 (overtime claim) + $733,550.40 (waiting time penalties) + $625,150.00 (wage statement claim) + $502,462.45 (attorneys' fees) = $4,798,635.62.